IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANITRA ADAMS | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 21-0646 |
| QVC, INC. | : |

**M E M O R A N D U M**

**Chief Judge Juan R. Sánchez**                                    **December 14 , 2021**

This Fair Labor Standards Act action is presently before this Court for adjudication of the

Plaintiff's Motion for Conditional Certification of the Proposed Class, Expedited Opt-In Discovery

and Court Approval of the Proposed Notice to Prospective Class Members.  Because the Plaintiff

has met the class requirements, the Motion shall be granted.

**FACTUAL BACKGROUND**

The Plaintiff, Lanitra Adams, filed this suit on February 11, 2021 as a collective, class

action on behalf of herself and all others similarly situated challenging the alleged practices and

policies of Defendant QVC, Inc. of not paying its non-exempt employees for all hours worked in

violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (FLSA).[1]           Adams alleges

she was employed as a non-exempt customer service representative in QVC's Chesapeake,

Virginia call center between June 2019 and March 2020 and in that position, was "required to

---

[1] The Plaintiff's Complaint also sought relief in Count II under the Pennsylvania Wage Payment
and Collection Law, 43 P.S. § 260.1, *et. seq.* That claim was dismissed on May 6, 2021 for the
reasons, *inter alia*, that Ms. Adams, who lived and worked in Virginia, received no wages in the
Commonwealth of Pennsylvania and was free to avail herself of similar remedies under the
Virginia Wage Payment Act, Va. Code § 40.1-29, *et. seq.*  The motion was also uncontested by
Adams.  As the Complaint sought class action status for a Pennsylvania class under Count II
only, the case now proceeds solely as a collective action under the FLSA.

perform unpaid work before clocking in each day, including but not limited to, starting and logging into Defendant's computer systems, numerous software applications, and phone system." (Compl., ¶¶s 16, 18, 20).  Adams estimates she spent approximately 10 - 20 minutes before her shift start times performing these tasks and 10 - 15 minutes after clock-out at the end of her shift, and alleges this policy extended to all other similarly situated employees. (Compl., ¶¶s 26-28, 33, 35).   On average, Adams worked at least 40 hours per week.  Like other similarly situated, customer service representative employees, in addition to not being paid for all of the time which she actually worked, Adams contends she also was not paid overtime compensation for all hours worked over 40 in a given work week. (Compl., ¶¶s 22-23, 38-40).   Concurrent with the filing of the Complaint, Adams filed Notice of Consent Forms from fifteen other individuals who were employed remotely and at QVC call centers in Virginia and Texas in which those individuals agreed to pursue their claims for unpaid regular and overtime compensation through this lawsuit. She further avers she is a capable representative to act on behalf of other, similarly situated employees, and she can and will act on behalf of their interests as well as her own.  Finally, Adams asserts potential collective action members are readily identifiable through QVC's payroll records and may readily be notified of this action and their opportunity to opt in pursuant to 29 U.S.C. § 216(b).  (Compl., ¶¶s 45-46).

Shortly after QVC filed its Answer to the Complaint denying the averments that it failed to pay overtime wages or for all of the time its customer service representatives spent working, Adams filed this Motion for Conditional Certification of this Collective Action, Expedited Discovery and Court-Supervised Notice to Potential Opt-In Plaintiffs.  Not surprisingly, the motion is opposed by QVC.  Following oral argument on December 7, 2021, the Motion is now ripe for determination.

**LEGAL STANDARDS**

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).   Under 29 U.S.C. § 206 and § 207, an employer must pay its employees at least the minimum wage and overtime compensation at 1 ½ times the usual rate of pay for all hours worked in excess of 40 in any workweek.   Failure to do so results in a right to bring an action to recover those unpaid sums, along with an equal amount as liquidated damages, by "any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).   A suit brought on behalf of other employees is known as a "collective action." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).   Such collective actions "lower individual costs to vindicate rights by the pooling of resources," and benefit the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Id.*

A few years ago, the Third Circuit answered the question: "just what is a collective action under the FLSA?" *Halle v. West Penn Allegheny Health System,* 842 F.3d 215, 222 (3d Cir. 2016). It concluded:

> [A]n FLSA collective action is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint "on behalf of" a group of other, initially unnamed employees who purport to be "similarly situated" to the named plaintiff.  Thus, via §216 (b), the FLSA provides a vehicle for managing claims of multiple employees against a single employer.  By permitting employees to proceed collectively, the FLSA provides employees the advantages of pooling resources and lowering individual costs so that those with relatively small claims may pursue relief where individual litigation might otherwise be cost-prohibitive.  It also yields efficiencies for the judicial system through resolution in one proceeding of common issues arising from the same allegedly wrongful activity affecting numerous individuals.

*Id.,* at 223.

Courts in this circuit use a two-step certification process for collective actions such as this one. *Karlo v. Pittsburgh Glass Works, LLC.,* 849 F.3d 61, 85 (3d Cir. 2017).  This is because, unlike class actions under Fed. R. Civ. P. 23, "collective actions under the FLSA must first be "conditionally" certified by the district court, which 'requires a named plaintiff to make a modest factual showing – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members.'" *Renig v. RBS Citizens, N.A.*, 912 F.3d 115, 123, n.1 (3d Cir. 2018) (quoting *Halle*, 842 F.3d at 223; *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536, n. 4 (3d Cir. 2012)).  At this stage, "the Court relies upon the initial pleadings and affidavits to determine … whether the putative class members were subject to a single decision, policy, or plan that violated the law." *Pearl v. Clearlink Partners, LLC.,* No. 20-10529, 2021 WL 2667134 at *2 (D. Mass. June 29, 2021) .

After this "modest factual showing" has been made by the named plaintiffs and the district court conditionally certifies that the proposed collective action plaintiffs are "similarly situated," a court-approved notice is permitted to be disseminated to all potential plaintiffs, who are then given the opportunity to affirmatively opt in as plaintiffs to the lawsuit. *In re Citizens Bank, N.A.,* 15 F.4th 607, 611 (3d Cir. 2021); *Halle*, 842 F.3d at 224.  "Once the FLSA plaintiffs provide written notice that they have opted into the collective, the parties conduct certification-related discovery and, eventually, the group of plaintiffs moves for final certification." *In re Citizens,* 15 F.4th at 611.  At this second step in the certification process, the plaintiff group "bears the burden of demonstrating by a preponderance of the evidence that they are all similarly situated under the FLSA." *Id.*  "Being 'similarly situated' means that one is subjected to some common employer

practice that, if proved, would help demonstrate a violation of the FLSA." *Karlo*, 849 F.3d at 85.[2] "If the District Court finally certifies the FLSA collective action, the matter goes forward with the participation of all plaintiffs who have opted in." *Id.* On the other hand, if final certification is denied, the opt-in plaintiffs are dismissed as plaintiffs and only the original named plaintiffs proceed to trial. *Id.; Halle*, 842 F.3d at 226.

**DISCUSSION**

In this case, Adams attests in the declaration attached to this motion that she was employed as a customer service representative by QVC at its Chesapeake, VA call center from June 2019 to March 2020 as an hourly, non-exempt employee, was only paid for her time after she was completely logged into the computer systems, numerous software applications and phone system and was not paid for the time she expended in doing so or the time spent logging out at the end of each shift. (Compl., Ex.2). She further states QVC required her to perform these unpaid tasks before and after each shift, she regularly worked more than 40 hours a week,  she observed that QVC did this to other customer service representatives and she believes she is similarly situated to these other employees. As a result of these QVC practices, policies and procedures, Adams states she was not compensated for all of the time she worked, including all of the overtime hours she worked each workweek. Finally, Adams consents to bring this action on her own behalf and

---

[2] In determining whether plaintiffs are similarly situated, relevant factors include:

- Whether the plaintiffs are employed in the same corporate department, division and location;
- Whether they advance similar claims;
- Whether they seek substantially the same form of relief; and
- Whether they have similar salaries and circumstances of employment.

Plaintiffs may also be found dissimilar based on the existence of individualized defenses. *Karlo*, 849 F.3d at 85-86 (quoting *Zavala*, 691 F.3d at 536-537).

on behalf of a class of similarly situated opt-in plaintiffs to include "[a]ll former and current customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by QVC, Inc. during the past 3 years." (Ex. 2, ¶¶s 1 – 12).  In more particularly addressing the "substantial similarities" between herself and the proposed class members, Adams' Declaration goes further, attesting she has "observed that the class and I:

(a) are/were employed by QVC as customer service representatives or in substantially similar positions;
(b) performed substantially identical functions or duties;
(c) are/were paid on an hourly basis;
(d) are/were classified by QVC as non-exempt employees;
(e) are/were paid only for work performed during scheduled shift start and stop times;
(f) are/were not paid for starting and logging into QVC's computer systems, numerous software applications, and phone system at the start of our shifts;
(g) are/were not paid for shutting down and logging out of QVC's computer systems, numerous software applications, and phone system at the end of our shifts;
(h) work/worked in excess of 40 hours in a workweek; and
(i) are/were not paid overtime at the rate of one and one-half times our regular rates of pay for all of the hours we worked over 40 in a workweek.

(Ex. 2, ¶ 13).

In addition to her own Declaration, Adams has also appended to her Motion to conditionally certify, declarations from 15 individuals who are either currently or formerly employed by QVC as customer service representatives.  Each of these declarations also attests to their makers having also not been paid for the time spent logging on and off of QVC applications and systems, not being paid overtime for hours worked in excess of 40 in a workweek, and their having observed QVC doing this to other employees whom each declarant believes to be substantially similar to themselves.  (Compl., Ex. 3).

As the legal recitation outlined above makes clear, the factual showing required to justify conditional certification of a collective action class is "modest."  Although as QVC points out, the

materials submitted are not perfect and it has submitted affidavits from six individuals who would

undoubtedly qualify as potential class members indicating that it takes minutes at most to perform

the tasks at issue, the Court nevertheless finds Adams has made the necessary showing  with the

declarations she submitted.  Hence her request for conditional certification of a class consisting of

"all former and current customer service representatives or persons with jobs performing

substantially identical functions and/or duties to customer service representatives employed by

QVC, Inc. during the past 3 years" shall be granted.

This does not end the matter.  Adams also requests leave to discover the names and contact

information for proposed class members and approval of her proposed form of notice.  These

requests are in keeping with proper procedure for management of collective actions.   As

recognized by the Supreme Court in *Hoffman-LaRoche,*

> We hold that district courts have discretion, in appropriate cases, to implement § 216(b) …
> by facilitating notice to potential plaintiffs.  … The District Court was correct to permit
> discovery of the names and addresses of the … employees. … The[ ] benefits (of
> proceeding as a collective action) depend on employees receiving accurate and timely
> notice of the collective actions so that they can make informed decisions about whether to
> participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of
> those similarly situated must grant the court the requisite procedural authority to manage
> the process of joining multiple parties in a manner that is orderly, sensible, and not
> otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil
> Procedure. … It follows that, once an … action is filed, the court has a managerial
> responsibility to oversee the joinder of additional parties to assure that the task is
> accomplished in an efficient and proper way.

*Id,* 493 U.S. at 169-171.

Adams seeks permission to submit a single interrogatory to QVC requesting the "name,

last known home address, last known telephone number, last known email address and

employment dates (in Microsoft Office Excel format), of all former and current customer service

representatives or persons with jobs performing substantially identical functions and/or duties to

customer service representatives employed by QVC during the past three (3) years."   (Compl.,

Ex. 4).  QVC asserts this interrogatory is too broad insofar as there has been no showing that

mailing notices to potential class members would be insufficient.  While this may be true, the

Court nevertheless agrees with Adams' observations regarding the importance of disseminating

notice as quickly as possible to as many asserted class members as possible and takes notice of the

now well-established issues with mail delays and errors related to U.S. Postal Service deliveries

since before the onset of the COVID-19 pandemic.  The Court therefore shall exercise its discretion

to permit discovery of the names, last known mailing addresses and email addresses and dates of

employment of the members of the proposed class.  Adams' request to notify potential class

members via text is denied.  The Court finds such notice to be both unnecessary and unnecessarily

intrusive on proposed members' privacy.  *See, e.g.*, *Hinterberger v. Catholic Health Sys.,* No. 08-

3205, 2009 U.S. Dist. LEXIS 97944, at *35 - *36 (W.D. N.Y. Oct. 21, 2009) (finding that in the

interest of privacy, production of phone numbers, social security numbers, dates of birth, and email

addresses was not appropriate), and *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 163 (N.D.

N.Y. 2008) (denying plaintiffs' request for telephone numbers and social security numbers).

Finally, QVC also objects to the form of Notice to potential class members proposed by

Adams.  Again, this is an area which falls within the Court's discretion, but the Court agrees the

Notice could be improved upon by including information concerning the ability of potential opt-

in plaintiffs to retain their own counsel and their obligations to participate in discovery.  *See*

*generally, Rosario v. Valentine Avenue Discount Stores, Co.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y.

2011); *Garcia v. Pancho Villa's of Huntington Village, Inc.,* 678 F. Supp. 2d 89, 95 (E.D. N.Y.

2010) (holding inclusion of such information appropriate in FLSA actions).  Thus, the Court

declines to approve the proposed notice as currently written,  directs Adams to confer with counsel

for QVC regarding acceptable verbiage, and subsequently provide an amended version to the Court for consideration.

**CONCLUSION**

For the reasons stated, the Motion for Conditional Certification of this Collective Class Action, Expedited Opt-In Discovery and Court-Supervised Notice to Potential Plaintiffs is granted with the provisos noted in this Memorandum Opinion.  The proposed class consisting of:

> all former and current customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by QVC, Inc. during the past three (3) years

is conditionally certified as requested.  In addition, the Plaintiff's lone interrogatory is approved with the exception noted, *to wit,* that discovery of potential class members' telephone numbers shall not be permitted.  Finally, the proposed form of Notice to Potential Opt-In Plaintiffs is approved condition on the direction that the parties shall confer and submit an amended form of proposed Notice to the Court within twenty (20) days.  Such amendment shall include language addressing the right of opt-in participants to retain their own counsel and their obligation to participate in discovery.

An Order follows.

BY THE COURT:

/s/ Juan R. Sanchez

_____

Juan R. Sánchez,        C.J.