# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANITRA ADAMS, on behalf of herself and all other similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>QVC, INC., et al.<br><br>    Defendants. | Civil Action No. 2:21-CV-00646<br><br>Hon. Judge Juan R. Sanchez<br><br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE** |

## I.    INTRODUCTION

Representative Plaintiff Lanitra Adams, on behalf of herself and all Opt-In Party Plaintiffs ("Plaintiffs"), and Defendants QVC, Inc., QVC Chesapeake, LLC, and QVC San Antonio, LLC ("Defendants") (collectively with Plaintiffs, "the Parties") respectfully move this Honorable Court to approve the proposed settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit 1.

Representative Plaintiff claimed that Defendants violated the FLSA by failing to pay non-exempt employees, including Plaintiff, for all hours worked, including overtime at the rate of one and one-half times their regular rates of pay for the hours worked over 40 each week. Specifically, Plaintiff alleged that Defendants failed to pay hourly customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives for the time spent working while not logged into Defendants' call programs, including time spent before and after their shifts logging in and out of Defendants' computer systems, applications, and phone system.

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during

extensive arms-length negotiations among the Parties. If approved by the Court, the Settlement will provide for the issuance of Settlement Payments within 30 days after the Court approves it.

The settlement documents submitted for approval or entry by the Court consist of:

Exhibit 1:    Joint Stipulation of Settlement and Release

Exhibit 2:    Declaration of Matthew S. Grimsley

Exhibit 3:    Declaration of Michael L. Fradin

Exhibit 4:    Declaration of Gary F. Lynch

Exhibit 5:    Order of Dismissal and Approving Settlement

The following sections explain the nature of the Action, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

## II.    FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### A.    <u>The Action</u>

On February 11, 2021, Representative Plaintiff Lanitra Adams initiated this "collective action" against Defendant QVC, Inc. for allegedly failing to pay Plaintiff and other similarly situated employees for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked over 40 each workweek, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.[1] (Doc. 1.) The crux of Plaintiff's claim is that she and similarly situated employees (*i.e*., customer service representatives) were not paid for time spent logging in and out of Defendants' computer systems, applications, and phone system. (*Id*.)

Defendant answered Plaintiff's Complaint denying liability, denying that Plaintiffs suffered damages, and alleging that Plaintiffs were properly compensated under the FLSA and that

---

[1]In her original Complaint, Plaintiff also asserted a claim under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq., on behalf of a Rule 23 class, but Defendant QVC Inc. filed a Motion to Dismiss said claim (Doc. 17), which this Honorable Court granted.

any time spent working off the clock was *de minimis* and not compensable under the FLSA. (Doc. 24; *see also* Doc. 55.)

On June 23, 2021, Plaintiff filed a Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs pursuant to 29 U.S.C. § 216(b) ("Motion for Conditional Certification"). (Doc. 27.) Defendant QVC, Inc. filed its Response in Opposition to Plaintiff's Motion for Conditional Certification on July 28, 2021. (Doc. 32.) Plaintiff filed a Reply in Support of the Motion on August 13, 2021 (Doc. 35), and Defendant QVC, Inc. filed a Sur-Reply on September 7, 2021 (Doc. 38).

On December 7, 2021, the Court held a lengthy hearing on Plaintiff's Motion for Conditional Certification. (Doc. 43.)

On December 14, 2021, the Court entered an Order granting Plaintiff's Motion for Conditional Certification—thereby conditionally certifying a collective class consisting of:

> All former and current customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by QVC, Inc. during the past three (3) years.

(Doc. 45.) In that same Order, the Court instructed the Parties to confer and submit an amended form of proposed Notice. (*Id*.)

Following the Court's December 14, 2021 Order, the Parties conferred, and based on Defendant QVC, Inc.'s records, the Parties learned that the members of the conditionally certified collective were employed with one or both of QVC, Inc.'s wholly owned subsidiaries: QVC Chesapeake, LLC and QVC San Antonio, LLC. As such, the Parties agreed to add QVC Chesapeake, LLC and QVC San Antonio, LLC as additional Defendants, and to modify the definition of the collective class accordingly. Thereafter, Plaintiff prepared an Amended Complaint, and the Parties negotiated an amended proposed Notice.

3

On January 12, 2023 the Parties filed a Joint Notice of Stipulation of Parties Allowing Plaintiff to File Amended Complaint. (Doc. 49.)

Also on January 12, 2022, the Parties filed a Joint Motion to Modify Definition of Conditionally Certified Collective Class and Approve the Amended Proposed Notice. (Doc. 50.) Specifically, the Parties requested that the conditionally certified collective class be modified and defined as follows:

> All former and current customer service representatives or persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by QVC, Inc.**,** QVC Chesapeake, LLC, and/or QVC San Antonio, LLC during the past three (3) years.

On January 14, 2022, the Court entered an order approving the Parties Joint Stipulation to Permit Plaintiff to File Amended Complaint. (Doc. 51.) That same day, the Court entered an order granting the Parties Joint Motion to Modify the Definition of the Conditionally Certified Collective as requested, and approving the parties' Amended Proposed Notice. (Doc. 53.)

On January 18, 2022, Plaintiff filed the Amended Complaint, which names QVC Chesapeake, LLC and QVC San Antonio, LLC as additional Defendants. (Doc. 54.)

On February 23, 2022, Plaintiff's counsel, who administered the notice process, sent the Court-approved Notice to the 2,706 putative collective class members via First Class Mail and email. (Ex. 2, Grimsley Declaration at ¶ 29.) The Notice period closed on April 9, 2022. (*Id.*) In addition to Representative Plaintiff, there are 254 Opt-In Party Plaintiffs. (*Id.*)

**B.    Investigation, Informal Discovery, and Settlement Negotiations.**

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. (*See* Ex. 2 at ¶¶ 30-31, 35, 36.) Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. (*Id.* at ¶ 35.) This included

interviewing and obtaining declarations from numerous putative class members. (*Id.*) Plaintiffs' Counsel also engaged in a significant amount of research and factual investigation in order to fully brief Plaintiffs' Motion for Conditional Certification and prepare to argue said Motion at the December 7, 2021 hearing. (*Id.*) After the notice period closed, the Parties engaged in a comprehensive exchange of information, which included time and pay records for Plaintiffs, and complete analysis and calculations of Plaintiffs' alleged damages. (*Id.* at ¶ 30, 36.)

The parties also engaged in extensive legal and factual discussions. (*Id.* at ¶ 37.) Counsel for the Parties engaged in several telephone discussions and exchanged numerous emails regarding Plaintiffs' claims, and Defendant's defenses, time, pay, and other employment information for Plaintiffs, and the calculations of Plaintiffs' alleged damages. (*Id.* at ¶¶ 31, 37.) The legal issues in the case were thoroughly researched and argued by counsel for the Parties, and all aspects of the dispute are well-understood by both sides. (*Id.* at ¶ 38.)

Between January 2022 and April 2023, the Parties engaged in extensive settlement negotiations, including the exchange of multiple letters and emails, and several lengthy discussions between Counsel for the Parties detailing the Parties' legal and factual positions. (*Id.* at ¶ 32.) After extensive research, analysis, discussions, correspondence, and good-faith bargaining, on April 17, 2023, the Parties reached an agreement to settle the lawsuit on the terms set forth in the Settlement Agreement attached herewith as Exhibit 1. (*Id.* at ¶¶ 33, 34.)

### C.    The Settlement Terms

If approved, the Settlement will cover Representative Plaintiff and the 254 Opt-In Party Plaintiffs. Because the proposed Settlement is an FLSA settlement for employees who have already opted in, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, and because the opt-ins already consented to Lanitra Adams as the Representative Plaintiff and to

be bound by any settlement and/or judgment in this case, no fairness hearing is required or requested by the Parties. *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

Pursuant to the Agreement, Defendants will pay $65,502.50 to the Plaintiffs for overtime damages ("Settlement Payments"), which will be divided into Individual Payments to each of the Plaintiffs. (Ex. 1 at ¶ 18.) In exchange, the Plaintiffs will release Defendants from federal and state wage-and-hour claims, rights, demands, liabilities, and causes of action asserted in this case for the Release Period. (*Id*. at ¶ 24.) The Individual Payments were calculated proportionally based on each of the Plaintiffs' alleged overtime damages during the calculation period based on the assumption that the three-year statute of limitations applies. (*Id*. at ¶ 19, Ex. 2 at ¶ 44.) Moreover, each Opt-In Plaintiff who is owed less than $50 will receive a minimum payment of $50. (Ex. 1 at ¶ 19; Ex. 2 at ¶ 45.)

The Settlement Payments to the Plaintiffs equal the unpaid overtime compensation owed to each of them assuming they worked 5 minutes off-the-clock each shift, *plus* full liquidated damages, *plus* an additional $5,033.70, which amount covers the $50 minimum payments to those Plaintiffs whose unpaid overtime plus liquidated damages equals less than $50. (*Id*. at ¶ 45.) The Individual Payments are provided in Appendix 1 of the Settlement.

Plaintiffs' Counsel calculated the alleged unpaid overtime compensation by adding

minutes to each day each Plaintiff worked each week during the calculation period to account for unpaid pre-and post-shift work. (*Id.* at ¶ 46.) Any additional overtime compensation worked was multiplied by one and one-half times each Plaintiffs' regular hourly rate. (*Id.*) Based on the records provided by Defendants and as analyzed by Plaintiffs' Counsel, during the calculation period, and assuming the three-year statute of limitations applies, Plaintiffs were allegedly denied $30,226.84 in overtime compensation at an extra 5 minutes added to each day worked. (*Id.* at ¶ 47.) Notably, assuming an extra 13 minutes of work per day, Plaintiffs would be owed approximately $64,080.55. (*Id.* at ¶ 47.) Thus, the sum of the Settlement Payments to Plaintiffs for alleged damages equals approximately 200% of the unpaid overtime at 5 additional minutes each day worked, and more than 100% of what the unpaid overtime would be if 13 minutes were added to each day worked. (*Id.* at ¶ 47.) As such, if approved by the Court, the Proposed Settlement will provide adequate payments to the Plaintiffs for unpaid overtime compensation.

In addition to the Settlement Payments to be paid to Plaintiffs for their overtime damages, the Parties negotiated separate payments for attorneys' fees and costs, and a Service Award Payment to be paid to the Representative Plaintiff. (*Id.* at ¶ 50.)

The Parties agree that $115,000.00 will be paid to Plaintiffs' Counsel for attorneys' fees and $6,365.60 for expenses incurred in the Action. (Ex. 1 at ¶ 23.)

Additionally, the Parties agree that $5,000.00 will be paid to Representative Plaintiff Lanitra Adams, in addition to her individual settlement payment, for her services as Representative Plaintiff and in exchange for a general release. (*Id.* at ¶ 22.)

## III.    THE PROPRIETY OF APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. In reviewing proposed FLSA settlements, Courts in the Third Circuit employ the requirements set

forth in *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982), and "should approve a proposed settlement between the parties if it is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Gaffney v. Xolo Tacos 2, Inc*., No. 19-711, 2020 WL 1640091, \*2 (E.D. Pa. April 2, 2020) (quoting *Lynn's,* 679 F.2d at 1355). There are three main factors to consider: (i) whether the settlement concerns a bona fide dispute; (ii) whether the settlement is fair and reasonable; and (iii) whether settlement does not frustrate the implementation of the FLSA. *Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-4580, 2019 WL 1785453, \*2 (E.D. Pa. April 24, 2019). "The Third Circuit has instructed that when analyzing these factors, a court must be mindful of the strong public policy in favor of settlements." *Id*. (citing *Farris v. JC Penny Co., Inc.*, 176 F.3d 706, 711 (3d Cir. 1999)). "Typically, Courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness." *Kauffman*, 2019 WL 1785453, \*2 (citing *Lynn's*, 679 F.2d at 1353-54). As discussed herein, the proposed settlement resolves a bona fide dispute, is fair and reasonable, and does not frustrate the implementation of the FLSA.

## A. <u>A Bona Fide Dispute Exists.</u>

"A proposed settlement agreement resolves a bona fide dispute if it 'reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute' and is not a 'mere waiver of statutory rights brought about by an employer's overreaching.'" *McGee v. Ann's Choice, Inc*., No. 12-2664, 2014 WL 2514582, \*2 (E.D. Pa. June 4, 2014) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

Here, a bona fide dispute between the Parties certainly existed. The parties disputed a number of issues in this case, including, *inter alia*, whether Defendants violated the FLSA; whether Representative Plaintiff and the Opt-In Party Plaintiffs performed pre/post-shift work that is compensable under the FLSA; the amount of time Plaintiffs spent performing the alleged pre/post-

shift work; whether the time spent performing the alleged pre/post-shift work was *de minimis* and not compensable; whether Defendants' alleged policies and Plaintiffs alleged failure to adhere to Defendants' alleged policies precludes a finding of liability; the amount of potential damages including whether Plaintiffs are entitled to any overtime compensation; whether Defendants acted willful, and thus, whether the two-year or three-year statute of limitations applies; and, if Plaintiffs were to succeed on the merits, whether they would be entitled to liquidated damages or whether Defendants have a good faith defense that would preclude an award of liquidated damages. (Ex. 2 at ¶ 39, 48.) Although Plaintiff believes the claims against Defendants for overtime compensation are meritorious, Defendants deny Plaintiff's allegations, deny that Plaintiffs are entitled to any overtime compensation, and raise several affirmative defenses. (*See* Doc. 55.) Defendants contended that QVC's policy prohibits employees from working before they clock-in or after the clock-out, that employees could clock-in before logging in to their computer system, and that any amount of time spent performing the alleged pre/post-shift work was *de minimis* and therefore not compensable under the FLSA. (*See* Doc. 32; Doc. 55.) Thus, the Settlement certainly resolves a bona fide dispute.

> **B.**    **The Settlement is Fair and Reasonable to Plaintiffs.**

In determining whether a settlement is fair and reasonable in FLSA collective actions, courts in the Third Circuit consider the factors identified in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks

of litigation.

*Fritz v. Terminite, Inc.*, No. CV 19-15749, 2020 WL 5015508, *2 (D.N.J. Aug. 25, 2020). As explained herein, an analysis of these factors certainly supports approval of the Settlement.

> ### 1.    The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour collective actions in particular, are expensive and time-consuming. As discussed in section II, *supra*, several factual and legal issues are in dispute in this case. The parties disagree on whether Defendants are liable under the FLSA and whether Plaintiffs are entitled to any overtime compensation. (Ex. 2 at ¶ 39, 60.) The parties also disagree over whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies under the FLSA. Defendant claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA. Defendant believes they acted in good faith in paying its employees, including Plaintiff.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. (*Id*. at ¶ 61.) The Parties would be required to engage in extensive formal discovery, which would be expensive and time-consuming given the continued factual and legal disputes between the Parties. (*Id*.) Moreover, the Parties would be required to engage in extensive briefing regarding collective class certification, decertification, and dispositive motions. Further, the duration of continued litigation is likely to be substantial. (*Id*.) A trial date will not even be scheduled until after the Court rules upon class certification/decertification and dispositive

motions, which the parties will not begin briefing until January 2024. (Doc. 78.) Trial of this matter would be complex and factually intensive with respect to both liability and damages, and any final judgment would likely be appealed. (Ex. 2. at ¶ 61.) Accordingly, this factor favors approval.

### 2.    The reaction of the class to the settlement favors approval.

There are no objections to the Settlement. Unlike a Rule 23 class action settlement, members of the putative collective in this case had the option of opting into this matter. Moreover, because the Court conditionally certified the putative collective long before the settlement was reached, the collective members on behalf of whom the settlement was reached (Plaintiffs) have already opted-in to this action and consented to Latrina Adams as Representative Plaintiff and to be bound by any settlement and/or judgement in this case.

### 3.    The stage of the proceedings and discovery favors approval.

This case has already been in litigation for more than two years, and the Parties engaged in in substantial investigation and informal discovery prior to negotiating the Settlement. (*Id*. at ¶ 30-38.) Plaintiffs' Counsel obtained extensive information and declarations from Representative Plaintiff and several of the Opt-In Party Plaintiffs. (*Id*. at ¶ 35.) After conditional certification was granted and the notice period closed, the Parties engaged in a comprehensive exchange of information. (*Id*. ¶ 30, 31, 36, 37.) Plaintiffs' counsel obtained and reviewed detailed time and pay records for the Plaintiffs and prepared calculations and a complete analysis of Plaintiffs' damages. (*Id.* at ¶ 36.) Moreover, the legal issues in the case were thoroughly researched and argued by counsel for the Parties. (*Id.* at ¶¶ 32, 35, 37, 38.) All aspects of the dispute are well-understood, and were vehemently argued. (*Id*. at ¶ 38.) Accordingly, this factor also favors approval.

### 4.    The risk of establishing liability favors approval.

"The likelihood of success . . . provides a gauge from which the benefits of the settlement

must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law and Plaintiffs' success at trial is far from guaranteed. (Ex. 2 at ¶ 39, 59, 60.) Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises several affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including decertification, summary judgment, and trial. Accordingly, this factor also weighs in favor of approval.

### 5.    The risk of establishing damages favors approval.

The risk of establishing damages likewise favors approval. (*See* Ex. 2 at ¶¶ 59, 60.) For example, if the Court or jury determined that the alleged pre/post-shift time was *de minimis* or otherwise not compensable, Plaintiffs would be entitled to no recovery. (Ex. 2 at ¶ 59.) Moreover, even if Plaintiffs were to succeed on the merits, the Court or a jury could find that Plaintiffs spent less time performing the alleged pre/post-shift work than that which was recovered in this Settlement. (*Id.* at ¶ 48.) The Court or a jury could also find that Defendant acted in good faith, and thus, Plaintiffs would not recover any amount for liquidated damages. (*Id*. at ¶ 60.) Moreover, the Court or a jury could find that Defendant did not act willfully, and thus a two-year statute of limitations would apply, which would cause certain Plaintiffs to be dismissed as their damages are not within the two-year statute of limitations. (*Id.*) Additionally, it would lessen the damages of Plaintiffs whose employment includes time within the three-year statute of limitations. (*Id*.) All of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id*.) Continued litigation would only serve to increase the attorneys' fees and expenses

in this matter, without any certainty that the Plaintiffs would obtain a higher verdict, or any verdict in their favor. Thus, this factor also weighs in favor of approval.

### 6.    The risk of maintaining the collective through trial favors approval.

While the Parties agree that Plaintiffs are sufficiently similarly situated for purposes of settlement, Defendants have vigorously argued that this case is not appropriate for collective treatment, and had this case not settled, the Parties would have had to engage in extensive briefing on the issue of decertification, the outcome of which would have been uncertain. Accordingly, this factor also favors approval.

### 7.    Defendants' ability to withstand a greater judgment.

Whether Defendants are able to withstand a greater judgment "does not carry much weight in determining whether to approve an otherwise fair and reasonable settlement." *Kyem v. Merakey USA*, No. 2:19-cv-05577, 2022 WL 425584, *4 (E.D. Pa. Feb, 11, 2022) (citing *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 3d 290, 318 (W.D. Pa. 1997) ("The Court presumes that Defendants have the financial resources to pay a larger judgment. However, in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial, the Court accords this factor little weight in deciding whether to approve the proposed Settlement.")). Moreover, in light of the risks associated with further litigation, as well as the other factors favoring approval, this factor does not weigh against settlement approval.

### 8.    The range of reasonableness of the settlement fund in light of the best possible recovery.

Plaintiffs' range of possible recovery is open to dispute. Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. (Ex. 2 at ¶ 60.) There are 255 Plaintiffs in this case, and because Defendant did not record the time they allegedly spent performing the alleged pre- and post-shift work, it

remains uncertain what their recovery should be. Moreover, while Representative Plaintiff estimates that it took her 10 to 20 minutes to log into Defendants' systems and applications, Defendant contends was not required to log into its systems and applications before clocking in, that doing so was against Defendants' directives, and that, even if she did, the pre-shift work took 2 minutes or less. (*see* Doc. 32.) Defendant also offered declarations—which Plaintiff disputes— of current employees, who stated that logging into Defendants' systems took only 2 minutes and logging out after clocking out took only a few seconds (*Id.*).

Nonetheless, the Settlement provides for Settlement Payments in the amount of $65,502.50 to be paid to Plaintiffs for their alleged damages, which amount the Parties reached based on the calculation of unpaid overtime that would be owed to Plaintiffs after adding 5 minutes to each day worked during the three-year statutory period, *plus* full liquidated damages, *plus* an additional $5,033.70 to provide for $50 minimum payments to those owed less than $50. (*Id.* at ¶ 45.)

Moreover, because the Settlement Payments account for full liquidated damages, the sum of the Settlement Payments to Plaintiffs is greater than what they would be owed in unpaid overtime if *13 minutes* were added to each of the Plaintiffs' daily hours worked, and that is assuming the three-year statute of limitations for willful violations applies. (*Id.* at ¶ 47.)  Adding 5 minutes to each day worked, and assuming the three-year statute of limitations applies, Plaintiffs are owed $$30,226.84 for unpaid overtime. (*Id.*) Adding 13 minutes to each day worked, and assuming the three-year statute of limitations applies, the unpaid overtime would be approximately $64,080.55. (*Id.*) Thus, the Settlement Payments to Plaintiffs for alleged damages equals approximately 200% of the unpaid overtime at 5 minutes added to each workday, and more than 100% of what the unpaid overtime would be if 13 minutes were added to each day worked. (*Id.*)

Lastly, even if a jury found for Plaintiffs, several of the Plaintiffs would recover very little

(if anything) at trial because many of them worked fewer than 40 hours per week and/or a limited number of weeks during the three-year statutory period. Nonetheless, because the Settlement Payments also include an additional $5,033.70 to cover the minimum payments, which is *in addition to* the $30,226.84 owed for unpaid overtime at 5 minutes added per day and the $30,226.84 for full liquidated damages, the Settlement ensures each of the Plaintiffs will recover something without reducing the recovery to those whose alleged damages exceed $50.

Simply put, while the range of possible recovery is in dispute, the Settlement provides for substantial relief to Plaintiffs promptly and efficiently. Thus, this factor also favors approval.

9. **The range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation.**

The settlement is certainly reasonable in light of the all the attendant risks of further litigation. Indeed, settling this matter now avoids the risk of, *inter alia*, decertification, dismissal on summary judgment, an unfavorable jury verdict, and/or an unfavorable decision on appeal.

If, as Defendants contend, the Court or jury were to find that the alleged pre/post-shift work was *de minimis* and not compensable, then Plaintiffs would receive nothing. (Ex. 2 at ¶ 59.)

If the Court of jury found that Defendants' violations were not willful, then Plaintiffs recovery will be limited to the two-year statute of limitations period and several Plaintiffs (who did not work for Defendants within the two-year period) would receive nothing. (*Id.* at ¶ 60.)

Further, if the Court or jury determined that Defendant has established a good faith defense, then no liquidated damages would be awarded. (*Id.*)

Moreover, even if the jury were to find in favor of Plaintiffs, the recovery awarded could certainly be far less than what Plaintiffs are receiving under the Settlement. For sake of comparison, if the jury and/or Court determined that the alleged pre- and post-sift work took 3 minutes per shift, that Defendants alleged violations were not willful (and thus, only the two-year

statute of limitations applies), and Defendant acted in good faith (thereby precluding liquidated damages), then Plaintiffs' total recovery would be approximately only $12,578.56. (Ex. 2 at ¶ 48.)

Accordingly, the attendant risks associated with holding out for a recovery at trial further tips the scale in favor of approval of the proposed settlement. With that, all the relevant factors demonstrate that the settlement is fair, reasonable, and adequate.

### C.    The Settlement Furthers and Does Not Frustrate the FLSA's Implementation in the Workplace.

In determining whether a settlement would frustrate the purposes of the FLSA, Courts consider whether it contains confidentiality restrictions and whether the release is overly expansive and all-encompassing. *See DiFlavis v. Choice Hotels Int'l, Inc*. No. 18-3914, 2020 WL 6728806, *7 (E.D. Pa. Nov. 16, 2020); *Gaffney*, 2020 WL 1640091, *5-*6.

In the case at bar, there can be no doubt that the settlement agreement furthers, and does not frustrate the purpose of the FLSA. The settlement agreement, which is being publicly filed, contains no confidentiality provision. (*See* Ex. 1.) Moreover, the Opt-In Party Plaintiffs are only releasing FLSA and analogous state law wage and hour-related claims against Defendants during the relevant time period. (*Id*. at ¶ 24.)

Accordingly, the Settlement should be approved, and the Parties request that the Court distribute the Settlement Payments to the Plaintiffs in the manner, and subject to the terms and conditions set forth in the Settlement Agreement.

## IV.    THE AGREED UPON PAYMENT OF ATTORNEYS' FEES AND EXPENSE REIMBURSEMENTS TO PLAINTIFFS' COUNSEL SHOULD BE APPROVED

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

Here, the requested payment to Plaintiffs' counsel for attorneys' fees was negotiated and agreed upon by Defendant without regards to the amount paid to Plaintiffs, and pursuant to the Settlement, payment of Plaintiffs' counsel's fees and costs will be made separate under the Settlement terms. Because this is a statutory fee shifting cases in which the Parties did not negotiate a common funds settlement, Plaintiffs' counsel fees are based on "the 'lodestar' method of calculating attorneys' fees". *Williams v. Securitas Sec. Servs. USA, Inc*., 2012 WL 5451802, \*3 (E.D. Pa. Nov. 8, 2012) (citing *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 177 (3d Cir.2001).

The Declarations from Plaintiffs' Counsel (Ex. 2; Ex. 3; Ex. 4) demonstrate the reasonableness and fairness of the requested attorneys' fees and expenses.

The attorneys' fees requested are reasonable in light of the substantial experience Plaintiff's Counsel has litigating class and collective actions, and the substantial number of hours of legal services they devoted to this case. Plaintiffs are represented by attorneys from three different law firms, all of which have extensive experience litigating wage and hour class and collective actions. (*See* Ex. 2, Ex. 3, Ex. 4.) Plaintiffs' counsel have collectively devoted more than 250 hours of legal services to this case, and estimate that they will devote an additional 15 to 20 hours to this case after filing the Settlement. (Ex. 2 at ¶ 54, Ex. 3 at ¶ 12, Ex. 4 at ¶ 10.) The sum of the fees requested ($115,000) is substantially *less* than Plaintiffs' counsel's lodestar to date (*see* Ex. 2 at ¶ 54; Ex. 3 at ¶ 12; Ex. 4 at ¶ 10), rendering the lodestar multiplier significantly less than 1.0 (approximately 0.83), which is well within the range of reasonableness. *See Parker v. Jekyll and Hyde Entertainment Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, \*2 (S.D.N.Y. Feb. 9, 2010) ("The amount of the attorneys' fees requested, $248,333.00, represents 1.55 times the lodestar. This is well within the range of acceptable multipliers."); *In re Telik, Inc. Securities Litigation,* 576 F.Supp.2d 570, 590 (S.D.N.Y.2008) ("a 1.6x multiplier is well within the range of

reasonableness")

The attorneys' fees requested are also reasonable in light of the benefit achieved for Plaintiffs. Indeed, as several of the Plaintiffs infrequently worked 40 or more hours per week and/or did not work many weeks during the three-year statutory period, their unpaid overtime damages are limited. Nonetheless, Plaintiffs' counsel negotiated a settlement that will provide significant relief to all Plaintiffs without the attendant risks and delay of continued litigation and appeals.

Moreover, the fact that the Plaintiffs' recovery is less than the fees Plaintiffs' counsel incurred does not warrant a reduction in Plaintiffs' counsel's fee award. *Cox v. Elite Energy LLC*, No. 09-4444, 2011 WL 4406364, *6 (D.N.J. 2011) ("the Court notes that FLSA claims may involve relatively small monetary awards, and the Court should not reduce a fee award solely on the basis that the attorney's fees are disproportionate to the damage award."). "[G]iven the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the case." *Heder v. City of Two Rivers,* 255 F.Supp.2d 947, 955–56 (E.D. Wisc. 2003) (quoting *Holyfield v. F.P. Quinn & Co.,* No. Civ. A. 90-C-507, 1991 WL 65928, *1 (N.D.Ill. Apr.22, 1991)). Attorneys' fees may be awarded even where those fees amount to a substantial percentage of the overall award, since "the whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 6 (2d Cir. 2013) (quoting *Millea v. Metro–N. R.R. Co.,* 658 F.3d 154, 169 (2d Cir.2011)). As the Sixth Circuit noted: "an award of attorney fees … 'encourage[s] the vindication of congressionally identified policies and rights,'" and thus "we have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir. 1994) (quoting *United Slate, Tile &*

*Composition Roofers, Damp & Waterproof Workers Ass'n, Loc. 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)); *Posner v. The Showroom, Inc.*, 762 F.2d 1010 (6th Cir. 1985). In *Fegley*, the Sixth Circuit upheld an award of $40,000in fees even though the plaintiff recovered $7,680 in damages. *Id.*

Other courts, including courts in the Third Circuit, have similarly declined to place an undue emphasis on the amount of the plaintiffs' recovery in FLSA cases. *See Rhee v. Super King Sauna NJ, LLC*, No. 20-9921, 2021 WL 3550221 (D.N.J. Aug 9, 2021) (approving FLSA settlement awarding Plaintiff's counsel $25,000 in fees and costs where Plaintiff recovered only $15,000); *Griffin v. Leaseway Deliveries, Inc.*, 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); *Bettger v. Crossmark, Inc.*, No. 1:13-cv-2030, 2015 WL 279754, *4 (M.D. Pa. Jan. 22, 2015) (finding FLSA settlement reasonable where it awarded $16,502.90 for attorney's fees and costs and only $6,597.09 for wage damages.); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698); *Howe v. Hoffman-Curtis Partners Ltd, LLP*, 215 Fed. Appx. 341, 342 (5th Cir. 2007) (affirming fee award of $129,805.50 on judgment of $23,357.30); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Albers v. Tri-State Implement, Inc.*, No. CR. 06-4242, 2010 WL 960010, *26 (D.S.D. Mar. 12, 2010) (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *Perrin v. John B. Webb & Assocs., Inc.*, No. 604CV399, 2005 WL 2465022, *4-5 (M.D. Fla. Oct. 6, 2005) (awarding $7,446.00 in attorneys' fees and costs although the plaintiff recovered $270.00, and recognizing that "in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time."); *Parks*

*v. Eastwood Ins. Servs., Inc.*, No. SACV02-507, 2005 WL 6007833, *1 (C.D. Cal. June 28, 2005) (awarding over $2 million in attorneys' fees and costs although the plaintiffs recovered $1.2 million); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Holyfield v. F.P. Quinn & Co.*, No. 90 C 507, 1991 WL 65928, *2 (N.D. Ill. Apr. 22, 1991) (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50); *Gordon v. Ohio Security Systems, Inc.*, No. 1:21-cv-01956 (N.D. Ohio March 6, 2023) (approving $50,000 payment to Plaintiffs' counsel for fees' and $8,284.10 for expenses where the sum of the individual payments to class amounted to $38,715.90 in settlement of FLSA collective action for unpaid overtime in connection with pre-shift work (Doc. 35, Motion for Approval; Doc. 36, Order approving settlement)); *Thompson v. Menorah Park Center for Senior Living Bet Moshav Zekenim Hadati*, No. 1:17-cv-02580 (N.D. Ohio Oct. 21, 2021) (approving $75,000.00 payment to Plaintiffs' counsel for attorneys' fees and $9,691.92 for expenses were sum of individual payments to class amounted to $58,308.08 in settlement of FLSA collective action for unpaid overtime in connection with post-shift work (Doc. 70, Motion for Approval; Doc 71, Order approving settlement)).

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

In the instant matter, Plaintiffs' counsel undertook representation under a contingent-fee

basis and invested a substantial amount of time and resources into this complex case. (Ex. 2, ¶ 57.) Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success or compensation. (*Id.* at ¶ 59.) At every step of the litigation, Defendant could have succeeded. (*Id.*) Plaintiffs were at great risk for non-payment or a payment less than what they will receive in this matter if the settlement is approved. (*Id.* at ¶ 58-60.) This risk of non-payment or a reduced payment strongly supports the amount requested here. (*Id.*)

The litigation expenses sought to be reimbursed are also proper and reasonable. Plaintiffs' Counsel has incurred out-of-pocket expenses in the amount of $6,365.60, which includes $402.00 for the filing fee, $215.00 for service; $240.00 for six (6) *pro hac vice* applications; $575.00 for public records searches; and $4,933.60 for administration of the Notice to the 2,706 individuals who fell within the scope of the putative collective class. (*Id.* at ¶ 63.) All expenses were incurred during the course of the litigation of this Action. (*Id.*)

## V.    THE SERVICE AWARD TO REPRESENTATIVE PLAINTIFF IS FAIR AND REASONABLE AND SHOULD BE APPROVED

The Court should also approve the requested $5,000 Service Award Payment to Representative Plaintiff Lanitra Adams for her services as Representative Plaintiff in this case. Service awards are routinely given to representative plaintiffs for their efforts in bringing and prosecuting the case. *See Myers v. Jani-King of Philadelphia, Inc*., No. 09-1738, 2019 WL 4034736 (E.D. Pa. Aug. 26, 2019); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the class action litigation." (*quoting In re Southern Ohio Correctional Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks

incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

The case at bar has been in litigation for more than two years, and Representative Plaintiff Lanitra Adams has been actively involved in this action since the pre-suit investigation that gave rise to it, and has served as the sole named Plaintiff since the action was commenced. (*See* Ex. 2, ¶¶ 16, 17, 52.) She agreed to bring the action in her name and agreed to testify at deposition and at trial. (*Id*. at ¶ 15.) She participated in the pre-suit investigation, and provided information crucial to the evaluation of and pursuit of the claims. (*Id*. at ¶ 16.) She provided extensive factual information to Plaintiffs' Counsel and faithfully engaged in several and extensive calls and other communications with Plaintiffs' Counsel, including assisting Counsel in providing information relative to the Complaint, and information and a declaration in support of the Motion Conditional Certification. (*Id.* at ¶ 52.) She has also been involved in the settlement process, provided information that assisted Plaintiffs' counsel settlement discussions, is fully informed of the Settlement, and has agreed to the Settlement. (*Id.*)

Moreover, Representative Plaintiff has risked her employment reputation by subjecting herself to the responsibilities of serving as the named Plaintiff in this lawsuit against her former employer. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context … [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-

workers"); *Mejia v. KVK-Tech, Inc.*, No. 2:19-cv-4841, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken"); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, *1 ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.*

Additionally, the requested Service Award is reasonable and consistent with awards that have been granted in other wage and hour collective actions. *See Myers*, No. 09-cv-1738, 2019 WL 4034736, *10 (approving service award of $10,000 to each Named Plaintiff stating that "[i]n addition to the Named Plaintiffs' active involvement in the litigation, they also risked their employment reputation by participating in this class action."); *Mejia v. KVK-Tech, Inc.*, No. 2:19-cv-04841, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (approving $5,000 service award to each named plaintiff and stating "Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken", and "a service award of $5,000 is in line with similar awards approved in other collective/class actions in this district."); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, *1 (S.D.N.Y. Dec. 2, 2014) (approving award of $10,000 to FLSA class representative); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, *7 (S.D. Ohio

July 11, 2014) (approving $10,000 service awards to two class representatives).

## VI.    CONCLUSION

For the forgoing reasons, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit 5.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (*pro hac vice*)
Anthony J. Lazzaro (*pro hac vice*)
Lori M. Griffin (*pro hac vice*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Michael L. Fradin (*pro hac vice*)
8401 Crawford Avenue, Suite 104
Skokie, Illinois 60076
Telephone: 847-986-5889
mike@fradinlaw.com

Gary F. Lynch
Edward W. Ciolko (*pro hac vice*)
Carlson Lynch, LLP
1131 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
eciolko@carlsonlynch.com
glynch@carlsonlynch.com

*Attorneys for Plaintiff*

/s/ *Cullan E. Jones*
Cullan E. Jones (*pro hac vice*)
Dawn Siler-Nixon (*pro hac vice*)
Ford Harrison LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, FL 33602
Telephone: 813-261-7800
Facsimile: 813-261-7899
cjones@fordharrison.com
dsiler-nixon@fordharrison.com

Diane Apa Hauser
Paisner Litvin, LLP
30 Rock Hill Road
Bala Cynwyd, PA 19004
Telephone: 484-436-2118
dhauser@paisnerlitvin.com

*Attorneys for Defendants*

24

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023, a copy of the foregoing *Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice* was sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

/s/ *Matthew S. Grimsley*
One of Plaintiff's Attorneys